[No. 2640.   Decided December 5, 1898.]

MARY HUGHES *et al., Respondents,* v. OREGON IMPROVE-
MENT COMPANY, *Appellant.*

MASTER AND SERVANT—COAL MINING—FELLOW-SERVANTS—FIRE IN
MINE—INJURY TO EMPLOYEE—CONTRIBUTORY NEGLIGENCE.

Where a coal miner, after notice that the mine was on fire
and a request sent him to leave the mine, for which there was
ample time, remained and was suffocated through the stoppage
of the ventilating fan and the opening of a tunnel door, thus
permitting the smoke to rush into the gangway where he was,
he was guilty of contributory negligence sufficient to bar the
recovery of damages for his death.

In the conduct of the business of coal mining, when neither
those in charge of the ventilating fan, nor the gas testers, nor
pit boss, nor outside boss, are clothed with any authority to
employ or discharge men, or to take the supervision and charge
of any department of the business, but are engaged in serving
the same master in the same general business, for the purpose
of accomplishing one general object, they are all fellow servants
with the miners working underground.

Although the shutting down of a ventilating fan at the time
of a sudden outbreak of fire in a coal mine may have been one
of the causes of the death of plaintiff's intestate, yet such act
cannot be charged as negligence, when it appears that it was
done in the excitement and confusion incident to learning that
the mine was on fire, while in ignorance of its location, and that,
had the fire been in a place other than it was, the shutting down
of the fan would have been the proper thing to have done.

The mere fact that a fire occurred in a coal mine is not proof
of negligence, when it does not appear to have been the result
of any act imputable to the company.

The fact that the fan was shut down at the wrong time, at
the outbreak of a fire in the mine, does not show negligence in
selecting or retaining the servants in charge of the fan, when it
does not appear that they had ever failed to discharge any of
their duties in connection therewith, or that the fan had not
been at all times properly operated, but that the omission was
due to an error of judgment when suddenly placed in a situation
demanding immediate action.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge.  Reversed.

*Burleigh & Piles,* for appellant.

*John E. Humphries, W. E. Humphrey,* and *E. P. Edsen,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—At the time hereinafter mentioned, the Oregon Improvement Company, appellant herein, was the owner and operator of a coal mine at Franklin, in this state.  The mine seems to have been worked in the customary manner, and in accordance with the provisions of our statute.  It consisted of seven levels, from three hundred to three hundred and fifty feet apart.  It was provided with four separate shafts, each of which afforded means of egress from the mine.  The main slope extended from the surface of the ground to the sixth level, and the sixth and seventh levels were connected by another shaft.  The main slope was used for raising the coal by means of cars operated by a steam engine, and for lowering supplies into the mine, and was also the usual place where the miners and other employees went into and out of the mine.  The sixth level extended both north and south from the bottom of the main slope.  This level had been driven north to a considerable distance, and this space was divided into rooms, or breasts, each being fifty feet from center to center and designated by a number.  These breasts were separated from each other by a partition of solid coal twenty feet thick, so that the working space in each one was thirty feet wide.  This gangway or level extended north as far as breast No. 87, and at that point it was connected with an air course which extended to the foot of the air shaft, which was provided with a stairway by which the men could enter or leave the mine.  This por-

tion of the mine was ventilated by a fan situated at the top of the air shaft at a point about three hundred and fifty feet higher than the entrance to the main slope. The breasts or rooms along the gangway extended back in the coal vein to the cross cut, which was parallel with the gangway and about thirty feet distant from it. The air shaft was connected with the gangway of the sixth level by a tunnel about one hundred and fifty-three feet in length, through the intervening rock, which was known as the "rock tunnel." At a point where it reached the gangway or level, and at or about chute 49, there was a door called the "rock tunnel door," which was placed there for the purpose of preventing the air from passing from the gangway through the tunnel directly to the air course when the fan was in operation. When the fan was in motion and the rock tunnel door closed, the air passed down the main slope along the gangway to the north end thereof, and then through the air course, and into the rooms where the miners were at work, thence out through the air shaft by way of the fan house. At about twenty minutes after eleven o'clock in the forenoon on August 24, 1894, one of the boys engaged in driving mules and hauling coal along the gangway of the sixth level discovered a fire in the chute of breast 62, about half way from the gangway to the cross cut. He immediately notified one John Schneider, who thereupon instructed this boy and several others who were working in the mine, to notify the miners to leave the mine, as it was on fire. At the time of the fire, the respondents' intestate, Evan Hughes, was working in the cross cut, between breasts 78 and 79, with one William Secor. An action was brought for the death of Secor and the case is reported in 15 Wash. 35 (45 Pac. 654). Hughes failed to leave the mine as requested, and was suffocated and killed by the smoke originating from the fire, together with thirty-six other miners. This action

was brought by his widow and children to recover damages for his death.

Several acts of negligence were alleged in the complaint, but plaintiffs at the trial principally relied upon the allegations that the fan was negligently shut down and the rock tunnel door opened, during the fire, thus causing the smoke to enter the gangway and smother the deceased. The case was tried to a jury, and a verdict and judgment were rendered for the plaintiffs, and the defendant appealed.

Numerous errors are assigned and relied upon by the appellant for a reversal of the judgment, but, under the view we take of the case, it is necessary to consider but one of them. At the close of the testimony in the case, the appellant moved the court to take the cause from the jury and to enter judgment in its favor, on the ground that there was not sufficient evidence to warrant a verdict against appellant, which motion was denied by the court, and an exception duly taken. The evidence showed, at the conclusion of all the testimony in the case, that the fire broke out in the mine at 11:20 or 11:25; that all the men in the mine were immediately notified of the fire and directed to come out of the mine; that the men furthest in the mine could have gone to a point south of the rock tunnel door, a place of perfect safety, inside of ten minutes; that the fan was shut down about 12:05, either by McDonald, who operated the fan under the direction of Ramsey and Smalley, or by the direction of the assistant superintendent having charge of the mine; that, prior to that time, the rock tunnel door was opened by John Johns, one of the gas testers on the sixth level, who acted upon the request of the miners themselves; that some fifteen of the miners, some of whom were further north from the fire and the rock tunnel door than the deceased, Hughes, was, escaped from the mine without injury; that smoke was first discovered issuing out of the fan house by one James

Cave, at about 11:25; that it was not known at that time what caused the smoke, but it was supposed to have been caused by overheating of the machinery; that the fan was slowed down at that time to examine the boxes, when it was found that the machinery was in perfect order; that the fan was then started up at full speed, and Cave went to the engine house to look for Mr. Ramsey, but, as Ramsey was then on his way to dinner, he did not find him, but saw one Smalley, who went to the mouth of the main slope and telephoned down to ascertain the location of the fire; Smalley and Cave then went to the fan house and, Smalley being also of the opinion that the boxes were overheated, slowed the fan down, but did not stop it, and, upon investigation, ascertained that there was no difficulty with the machinery; that, for some time before the fan was shut down, a large volume of smoke was issuing out of the fan house and extending from one hundred to one hundred and fifty feet into the air; that at about 12:05 a young man by the name of Grantilla, one of the trip riders at the mine, and who came from the direction of the mine, ran up to the fan house and called out: "The whole north 6th is on fire. Shut down the fan;" that the men at the fan house, assuming that this notice and request came from the miners, without stopping to investigate, and thinking it was the right thing to do, stopped the running of the fan. There was some slight testimony tending to show that the fan was stopped by order of Ramsey, the acting superintendent of the mine. Under these circumstances, the questions are, (1) whether Hughes was guilty of contributory negligence; and (2) whether there was sufficient evidence of negligence on the part of the company to constitute a case for the jury. The jury found specially that Hughes' death was caused by the opening of the rock tunnel door and the shutting down of the fan; and it is claimed by the respondents that there was no tes-

timony in the case showing any contributory negligence
on the part of Hughes. The appellant contends that there
was no negligence proven upon its part, and that, there-
fore, the court should have so determined and have taken
the case from the jury. This court held in the case of
*Pugh v. Oregon Improvement Co.,* 14 Wash. 331 (44 Pac.
547, 689), and which grew out of the same calamity which
is the foundation of this action, that Pugh, by remaining
in the mine when he was required and had opportunity to
leave the mine, was guilty of such gross contributory negli-
gence as prevented a recovery against the company. The
facts in this case are substantially the same as those in
the case of Pugh. It is shown by undisputed evidence
that nearly half an hour elapsed between the time the men
were notified of the fire and to leave the mine and the
shutting down of the fan, and that all of the miners could
have gone to the south of the rock tunnel door, a place of
absolute safety, or even out of the mine, in less than half
of that time. It was also held by this court in the *Pugh
Case* that the rock tunnel door was opened by a fellow
servant of the deceased and that, if the fan was closed
down, as claimed by appellant, by McDonald, who was
operating it under the direction of the assistant superin-
tendent, and Smalley, who was outside boss, such closing
down was by fellow servants with the deceased, and that
for their negligence the company was not responsible. We
are not disposed to recede from the rulings made in that
case, for we think they are abundantly supported by the
very highest authorities. This mine, the evidence shows,
was under the sole supervision and control of Ramsey.
Neither those in charge of the fan nor the gas testers, the
pit boss, nor top boss, were clothed with any authority to
employ or discharge men, or to take the supervision and
charge of any department of the business. It was the duty
of the gas testers simply to examine and ascertain whether

there were any noxious gases in the places where the miners were required to work, and to warn the miners not to enter those places in case they found gases to exist there. The pit boss simply directed the miners where to work, and saw that they complied with his directions. The outside boss, or top boss, as he is called in the testimony of the witnesses, simply took charge of the coal after it was taken from the mine, and of the lowering of timber and material for the workmen under ground. All these individuals were therefore engaged in serving the same master in the same general business, for the purpose of accomplishing one general object, and were therefore fellow servants with each other. 1 Shearman & Redfield, Negligence (4th ed.), § 235; *Colorado Coal & Iron Co. v. Lamb,* 6 Colo. App. 255 (40 Pac. 251); *What Cheer Coal Co. v. Johnson,* 56 Fed. 810; *Lehigh Valley Coal Co. v. Jones,* 86 Pa. St. 432; *Brazil & Chicago Coal Co. v. Cain,* 98 Ind. 282; *Peterson v. Whitebreast Coal Co.,* 50 Iowa, 673 (32 Am. Rep. 143); *Baltimore & Ohio R. R. Co. v. Baugh,* 149 U. S. 368 (13 Sup. Ct. 914); *Northern Pacific R. R. Co. v. Hambly,* 154 U. S. 349 (14 Sup. Ct. 983); *Northern Pacific R. R. Co. v. Peterson,* 162 U. S. 346 (16 Sup. Ct. 843); *Northern Pacific R. R. Co. v. Charless,* 162 U. S. 359 (16 Sup. Ct. 848).

But, while we are convinced that the deceased was guilty of such contributory negligence as to preclude a right of action against the appellant, we are also of the opinion that there was no proof of negligence on the part of appellant. It was appellant's duty to exercise ordinary care in selecting its servants and employees, and in providing them a safe place to work in, and proper material and appliances with which to work; and we are of the opinion that it fully discharged its duties in those respects. Even if it be true that the fan was closed down by order of the superintendent, as claimed by respondents (though the great weight

of the evidence is to the contrary), and that the shutting down of the fan was one of the causes of the injury complained of, still we think that, under the circumstances of the case, such closing down of the fan was not negligence.    The evidence discloses that, at the time the fire was discovered by the men upon the outside of the mine, they were suddenly placed in a situation demanding immediate action, and that in the excitement and confusion occasioned by the discovery of the fire and the peril of the men below, and not knowing the precise location of the fire, they decided to do, and did do, what seemed to them best at the time.    If what was done was not the best thing that could have been done, it, nevertheless, cannot be deemed an act of negligence, but must be considered a mere error of judgment, for which the company cannot be held responsible.    *Williams v. Le Bar,* 141 Pa. St. 149 (21 Atl. 525) ; *Phillips v. The Pilot,* 82 Fed. 111; *Gumz v. Chicago, M. & St. P. Ry. Co.,* 52 Wis. 672 (10 N. W. 11) ; *Brown v. French,* 104 Pa. St. 604.

In the last case cited the court says:

" No one can be charged with carelessness when he does that which his judgment approves, or where he omits to do that of which he has no time to judge.    Such act or omission, if faulty, may be called a mistake but not carelessness."

But it is claimed by the respondents that it was negligence on the part of appellant to permit the fire to break out in the mine.·  We think, however, that they are mistaken in that regard.    All that the proofs show is that the fire was discovered in a place where it could have been least expected, and which was carefully inspected the evening before.    The origin of the fire is unknown, but the testimony of all of the witnesses who testified upon the point, if true, shows that it was not the result of spontaneous combustion, or of any act imputable to the appellant.

The mere fact that the fire occurred is not, in itself, proof of negligence. Bailey's Master's Liability for Injury to Servants, p. 508; *Kuhns v. Wisconsin, I. & N. Ry. Co.,* 70 Iowa, 561 (31 N. W. 868).

Nor do we think that the fact that the fan was shut down by appellant's servants showed that appellant was negligent either in selecting or retaining such servants. It does not appear that the parties in charge of the fan had ever failed to discharge any of their duties in connection therewith, or that the fan had not been at all times properly operated, or that the mine was at any time not sufficiently ventilated.

For the foregoing reasons the judgment is reversed, and the cause remanded to the court below, with directions to enter judgment for appellant.

SCOTT, C. J., and GORDON, J., concur.

DUNBAR, J. (dissenting).—I am compelled to dissent from the conclusion reached by the majority. It would be of no avail to enter into an analysis of the testimony, but I think it differs materially from the testimony presented in the case of *Pugh v. Oregon Imp. Co.,* 14 Wash. 331 (44 Pac. 547, 689), although in that case I did not join in the decision to deny the petition for rehearing, as I subscribed to the original opinion under a misapprehension of the testimony, which was exceedingly voluminous. In the *Pugh Case, supra,* it was conceded for the purposes of the opinion that it was an established fact that the operation of the fan was stopped by Ramsey, the assistant superintendent, and that this would sustain the charge of negligence against the defendants; but that case was decided squarely upon the ground of contributory negligence on the part of Pugh. It is now said by the majority in this case that there was no proof of negligence on the part of appellant. There was testimony tending to show that the

fan was closed down by the order of the superintendent. With the weight of the testimony, this court should not concern itself. That falls within the special province of the jury. It is not sufficient in my mind to hold the company to reasonable care in the operation of such works as this mine is shown to be, but, in the interest of the safety of human life, it ought to be held to the very highest care. If Mr. Ramsey, the superintendent, found it necessary to leave the mine to go to his dinner, or for any other purpose, he ought to have left some one in his stead; and that some one, whether it was Mr. Smalley, or whoever it might be, would be, for the time being, the superintendent of the mine, and would not be a fellow servant, in any sense. I think the whole testimony shows that if the company had exercised that degree of care which it should have exercised, considering the dangers to which its employees were subjected, this accident would have been averted. I think the judgment should be affirmed.

REAVIS, J.—I join in the foregoing dissenting opinion.