[No. 32358.   Department Two.   November 5, 1953.]

CAMBRO COMPANY, *Respondent,* v. PAUL SNOOK *et al.,*
*Appellants.*[1]

*Ryan, Askren & Mathewson,* for appellants.

*Cochran & Cochran,* for respondent.

[1]Reported in 262 P. (2d) 767.

DONWORTH, J.—Plaintiff instituted this action to recover for damage to its buildings resulting from two fires allegedly caused by the negligent operation of an acetylene torch being used by defendants' employee. The case was tried to the court sitting without a jury. After making certain findings of fact and conclusions of law, the court entered judgment for plaintiff. Defendants have appealed from that judgment.

For convenience, we shall hereafter refer to defendant husband as if he were the only appellant.

The undisputed facts show that the buildings in question adjoined one another at 2516-20 Holgate avenue, Tacoma, Washington. One was a two-story structure which had been constructed in 1917, while the larger building, consisting of four stories, was considerably older. From 1918 until 1942, the buildings were used by a soap manufacturer for processing cocoanut oil. When World War II began, the soap company ceased its operations, but thereafter some parts of the buildings were used for storage purposes.

On July 31, 1950, respondent purchased the buildings, the land upon which they stood, and the bins, vats, pipes, and other metal equipment formerly used for the processing of cocoanut oil. Respondent's secretary-treasurer testified that the buildings were purchased for warehouse purposes. Before they could be so used, it was necessary to remove the processing equipment. Appellant was contacted, and, after twice examining the buildings and their contents, he offered to purchase and remove this equipment for one thousand dollars. Respondent accepted the offer. Appellant paid the money and on August 15, 1950, began the dismantling operations.

Acetylene torches were used to cut the equipment into pieces so that they could be removed from the buildings through existing exits. During the period that the dismantling operations were being conducted, two fires occurred. The first fire was reported at 3:23 a. m. on August 29, 1950. This fire occurred in the four-story building and caused only slight damage. At 9:29 a. m. on September 11, 1950, the second fire was reported, this time in the two-story

building. The damage resulting from the second fire was considerably more extensive.

Respondent contended and sought to prove that the fires resulted directly from the negligent use of a cutting torch by one of appellant's employees. At the close of respondent's evidence and again at the end of the case, appellant moved for a dismissal on the ground of insufficiency of the evidence to establish a cause of action. The motions were denied.

The court in its oral decision, following closing arguments by counsel, stated that the evidence was insufficient to establish the cause of the fire on August 29th, but further stated that a cause of action against appellant had been established as to the second fire, and that the resultant damages amounted to four thousand two hundred dollars. Later, the court entered its findings and rendered judgment for respondent in that amount.

This appeal is concerned only with so much of the record as pertains to the fire which occurred in the two-story building on September 11, 1950.

Appellant makes eight assignments of error, all of which relate to findings or conclusions which the trial court entered or declined to enter. The first assignment of error is directed at that portion of finding of fact No. 3 wherein the court found:

"That at said time and place and as a part of repair work being done by these defendants, an employee of these defendants was using an acetylene torch to remove certain steel vats necessary to be removed by these defendants as a part of such work. That the said employee of the defendants, in the operation of the said torch, was negligent and careless in that he did allow the flames therefrom to come in contact with portions of the building upon which he was working causing the same to catch fire and damaging the building."

In order to sustain this finding, it must appear from the evidence that the fire resulted from the use of an acetylene torch operated by one of appellant's employees in such a negligent manner as to allow the flame from the torch to come in contact with the building.

■ In reviewing the evidence this court is governed by the well established rule that a finding of the trial court will not be disturbed unless it is clearly not supported by a preponderance of the evidence. *Cugini v. McPhail*, 41 Wn. (2d) 804, 252 P. (2d) 290, and cases cited.

Neither party produced a single witness who was present in the two-story building when the fire started or shortly prior thereto. There being no direct testimony as to the elements essential to establish appellant's liability, the finding complained of was, of necessity, based upon circumstantial evidence.

Respondent's secretary-treasurer testified that he visited the building on different occasions during the course of the dismantling operations and saw appellant's workmen using acetylene torches. He was not present on September 11th and, in fact, did not hear of the fire until two days later. He stated that it was possible that persons other than appellant's workmen could have gained admittance to the premises through a side door which was not closed. He admitted that some of respondent's workmen were assigned the job of tearing partitions out of the building, but was not sure exactly when this work started. One of these workmen later testified that he worked on the partitions *after* the fire, but gave conflicting testimony when asked if anyone else employed by respondent was working in the building during the period that the metal equipment was being removed.

Lieutenant R. K. Heymel, of the Tacoma fire department, was called as a witness for respondent. He testified that he had served eight years as a fireman and had had six years experience in his present position as fire inspector. When he arrived at the scene of the fire, some twenty minutes after the alarm was sounded, it was well under control. He stated that, besides the firemen, he saw some workmen present, but did not know whose employees they were. When asked if he was able to determine the cause of the fire, he stated:

"By past experiences, generally when there are dismantling operations, the first thing you look for is cutting operations, probably. Evidence was there. It is my opinion

that the fire started from cutting operations. The acetylene hose was in that area and burned."

Under cross-examination by appellant's counsel, Lieutenant Heymel admitted that he had not seen any torch in use, and that the fire could have started by some other means.

The evidence bearing upon the alleged negligent operation of the acetylene torch is as follows:

Lieutenant Heymel was the only witness who visited the scene of the fire on the day in question. He stated that he could not determine whether the flame from the damaged torch which he found on the floor had come in contact with the wood and could not be sure whether the torch had been operated in a careless manner by whoever was using it.

None of the witnesses testified that an acetylene torch was being used by any employee of appellant on the morning of the fire. Nor was there any evidence that a torch was being operated by anyone in such a negligent manner that the flame from it was carelessly allowed to come in contact with any wooden part of the building.

When appellant, on cross-examination, was asked whether his workmen had not cut some pipes running through the floor right at floor level, he replied:

"No, never did. They were cut off anywhere from four to six inches above the floor. . . . And through the partitions the same way."

There was no other testimony as to how close the cutting was done to the wooden floors or partitions, and even respondent's secretary-treasurer, who witnessed some of the cutting prior to the date of the fire, did not testify that the work was then being done in a negligent manner.

There was evidence that the building was old, and that in many places the wood was impregated with cocoanut oil as a result of the previous processing operations. There was also evidence that the heat of a cutting torch used in this type operation would necessarily be many times hotter than the ignition temperature of the impregnated wood. Yet, when Lieutenant Heymel was later called back to the stand as a witness for appellant, his testimony was as follows:

"Q. Lieutenant, you investigated the fire that occurred on September 11th? A. I did. Q. Did you find any evidence of any carelessness or unreasonable conduct? A. *None other than what actually is practiced generally on that type of work.* Q. Did you find that any safety measures had been taken? A. I saw extinguishers there. Q. Were they the type of extinguishers that are common in the practice? A. They would fulfill the duties that were required for that type. Q. Are they the extinguishers that are normally used? A. They usually use that type or water buckets or a hose, whatever is available. Q. You would say that the measures that you observed would be normal safety measures? A. *That's right.*" (Italics ours.)

Under cross-examination, his testimony was as follows:

"Q. What kind of extinguishers were there, Lieutenant? A. They were the two and a half gallon soda and acid type, or foam type. It wouldn't make any difference in that particular case. Q. Now, when you say that they used the ordinary measures, was it a fact that this particular condition of the wood and so forth was more dangerous than the ordinary type of situation? A. *Generally no.* Usually when you are taking old machinery and old material out you have a general oily condition. Possibly you wouldn't have the impregnation of your soaps and oils in all locations." (Italics ours.)

Even assuming that the evidence as outlined above was sufficient to support the portion of the finding that the fire was caused by an acetylene torch, respondent failed to prove by a preponderance of the evidence that the torch was operated by one of appellant's employees in a negligent or careless manner. Negligence cannot be assumed merely because the evidence shows that a fire occurred or an accident happened. *Hughes v. Oregon Improvement Co.,* 20 Wash. 294, 55 Pac. 119; *Sellman v. Hess,* 15 Wn. (2d) 310, 130 P. (2d) 688; *Evans v. Yakima Valley Transp. Co.,* 39 Wn. (2d) 841, 239 P. (2d) 336. It must be established by evidence or by a legitimate inference from the established facts. *Evans v. Yakima Valley Transp. Co., supra.*

Respondent argues that the finding was based upon legitimate inferences from the established facts and not on mere

speculation or conjecture. The cases of *Sommer v. Yakima Motor Coach Co.*, 174 Wash. 638, 26 P. (2d) 92, and *Nelson v. West Coast Dairy Co.*, 5 Wn. (2d) 284, 105 P. (2d) 76, 130 A. L. R. 606, are cited in support of this contention.

However, we believe that the evidence in those cases was much stronger than in the present case, and that the problem here presented is similar to *Home Ins. Co. of New York v. Northern Pac. R. Co.*, 18 Wn. (2d) 798, 140 P. (2d) 507, 147 A. L. R. 849. There, the issue was whether the shipper's negligence was the proximate cause of a fire which burned two carloads of wheat which were standing near a grain elevator. In considering the circumstantial evidence shown by the record in that case, we said:

"The rule is well established that the existence of a fact or facts cannot rest in guess, speculation, or conjecture. It is also the rule that the one having the affirmative of an issue does not have to make proof to an absolute certainty. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the thing in question, such as the occurrence of a fire, happened in such a way as to fix liability upon the person charged therewith than it is that it happened in a way for which a person charged would not be liable. In applying the circumstantial evidence submitted to prove a fact, the trier of fact must recognize the distinction between that which is mere conjecture and what is a reasonable inference.

"These principles are defined and discussed in many of our cases, and we cite among them the following: *Parmalee v. Chicago, M. & St. P. R. Co.*, 92 Wash. 185, 158 Pac. 977; *Prentice Packing & Storage Co. v. United Pac. Ins. Co.*, 5 Wn. (2d) 144, 106 P. (2d) 314; *Nelson v. West Coast Dairy Co.*, 5 Wn. (2d) 284, 105 P. (2d) 76, 130 A. L. R. 606; *Letres v. Washington Co-Op. Chick Ass'n*, 8 Wn. (2d) 64, 111 P. (2d) 594. The factual situation in each of the cases is different from the others and from the one now under consideration, but we cite them merely as an exposition of the principles which must guide us in deciding this case.

"The appellant contends that, as babbit bearings are more likely to wear and become hot than roller bearings and, hence, create a greater hazard, and since the fire originated in the boot, the overheating of the bearings must have been the cause of the fire. It seems to us, however, that what was

said by this court in the *Prentice* case, *supra*, p. 162, is applicable here:

"'The pressure of the refrigerant *could* have caused the rupture if the pipe were worn to a thinness of approximately one ten-thousandth of an inch; the rupture did occur; therefore, the pipe must have been worn to the required point. This, however, is but reasoning in a circle. It assumes a fact necessary to establish a cause of action, but concerning which assumed fact there is no evidence, and then employs the supposititious fact as the basis for a conjecture as to the possible cause of a particular physical result.'

"We believe that the claim made by the appellant as to the cause of the fire rests upon conjecture and speculation rather than upon the existence of any proven facts from which a reasonable inference may be drawn that the fire was the result of any act or default of the shipper."

Our most recent decision distinguishing between reasonable inferences and mere speculation or conjecture is *Arnold v. Sanstol, ante* p. 94, 260 P. (2d) 327. We there said:

"When reliance is placed upon the latter type of evidence [circumstantial], there must be reasonable inferences to establish the fact to be proved. No legitimate inference can be drawn that an accident happened in a certain way by simply showing that it might have happened in that way, without further showing that reasonably it could not have happened in any other way. The facts relied upon to establish a theory by circumstantial evidence must be of such a nature and so related to each other that it is the only conclusion that fairly or reasonably can be drawn from them. A verdict cannot be founded on mere theory or speculation. If there is nothing more tangible to proceed upon than two or more conjectural theories, under one or more of which a defendant would be liable, and under one or more of which there would be no liability upon him, a jury will not be permitted to conjecture how the accident occurred. *Gardner v. Seymour*, 27 Wn. (2d) 802, 808, 180 P. (2d) 564 (1947), and cases cited; *Carley v. Allen*, 31 Wn. (2d) 730, 737, 198 P. (2d) 827 (1948); *Stevens v. King County*, 36 Wn. (2d) 738, 747, 220 P. (2d) 318 (1950), and cases cited."

Respondent's theory in this case was that an unnamed employee of appellant at some indefinite time before the fire was using an acetylene torch and carelessly permitted

the flame to come in contact with some wooden portion of the building. In his defense, appellant sought to rebut this theory by showing that the fire could have occurred in some other manner. Consequently, we have nothing more tangible to proceed upon than two conjectural theories. One theory could as reasonably have been adopted as the other.

This case does not involve the problem of passing upon the credibility of witnesses whose testimony is in conflict. Rather it involves respondent's failure to prove by either direct or circumstantial evidence that the fire could not reasonably have occurred without negligence on the part of one of appellant's employees.

■ Respondent argues that it can rely on the doctrine of *res ipsa loquitur* even if the proof was not sufficient to establish a specific act of negligence on the part of appellant's employee. Before this doctrine will be applicable in any specific case, the circumstances must be such that normal experience indicates that the injury would not have happened in the absence of negligence on the part of the defendant. *Firebaugh v. Seattle Electric Co.*, 40 Wash. 658, 82 Pac. 995; *Lewinn v. Murphy*, 63 Wash. 356, 115 Pac. 740; *Topping v. Great Northern R. Co.*, 81 Wash. 166, 142 Pac. 425; *Pacific Coast R. R. Co. v. American Mail Line*, 25 Wn. (2d) 809, 172 P. (2d) 226, and cases cited.

■ The use of a torch near a wooden surface creates a danger of fire even when adequate precautions are taken. Normal experience indicates that a fire could have resulted even in the absence of any negligence upon the part of the operator. Therefore, the doctrine of *res ipsa loquitur* is not applicable. See *World Fire & Marine Ins. Co. v. Alliance Sandblasting Co.*, 105 Conn. 640, 136 Atl. 681.

There is no substantial tangible evidence to support the quoted portion of finding of fact No. 3 (wherein the trial court found that an unidentified employee of appellant was careless and negligent in allowing the flame from an acetylene torch to come in contact with the building). We must, therefore, hold that the court erred in so finding. The re-

618

maining findings are insufficient to support the judgment. Consequently, it must be reversed with instructions to dismiss the action. It is so ordered.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.