[No. 33039. Department Two. January 5, 1956.]

CHARLES H. MASON *et al., Appellants,* v. R. D. TURNER *et al.,*
*Respondents.*[1]

[1]Reported in 291 P. (2d) 1023.

*Walthew, Oseran & Warner,* for appellants.

*Driftmier & Driftmier* and *Welts & Welts,* for respondent Turner.

*Alfred McBee,* for respondent Morgan.

ROSELLINI, J.—The plaintiffs brought this action to recover loss of earnings and other damages sustained by reason of the death of their minor son, Ronald Neil Mason, who was drowned while en route from Blaine to Similk Beach, Anacortes, Washington, aboard a barge, which they alleged was the property of the defendants. According to the allegations of their complaint, the boy was an employee of the defendants and was within the scope of his employment at the time he lost his life, and his death resulted from the failure of the defendants to provide him with a safe place to work.

At the conclusion of the plaintiffs' case, the defendants moved for a directed verdict. Their motion having been denied, the defendants elected to stand upon it and presented no evidence.

The jury returned a verdict for the plaintiffs in the sum of seven thousand five hundred dollars; whereupon the court granted the defendants' motion for a judgment n.o.v.

on the ground that there was no evidence, nor reasonable inference from the evidence, to support a finding that the decedent was within the scope of his employment at the time he met his death. In the alternative, a new trial was granted by reason of the court's failure to give a requested instruction on the law of partnership.

Error is assigned to both of these rulings.

There were no witnesses to the accident, nor were there any witnesses having knowledge of the terms of the employment contract. The plaintiffs' son and Jim Turner, son of the defendant R. D. Turner, were the only persons aboard the barge at the time of the accident, and both were drowned. They were seen leaving the dock at Blaine, after the barge had been loaded with oysters from the seed beds maintained by the defendant Turner; their destination was the fattening beds at Similk Beach, owned by Turner but alleged by him to have been leased to a partnership composed of his son and the defendant Morgan. There was testimony that the Mason boy was seen picking oysters, along with thirty or more other employees, during the loading operation, and the defendants do not dispute that the decedent had been employed for this purpose. Their contention is that the employment had terminated before he boarded the boat and that the circumstances testified to at the trial do not give rise to an inference that it had not terminated but continued during the trip from Blaine to Anacortes.

It appears that the terms of the employment contract were solely within the knowledge of the two persons who were drowned. Unless the circumstantial evidence offered gives rise to an inference that the decedent was aboard the barge in his capacity as an employee, the action of the trial court in granting the judgment n.o.v. must be sustained.

 "A verdict will not be set aside unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to support the verdict. The evidence must be viewed in the light most favorable to the party against whom the motion is made. All competent evidence favorable to the party who obtained the verdict must be taken as true, and that party must be

given the benefit of every favorable inference which reasonably may be drawn from the evidence. If there is substantial evidence to support the verdict, it must stand. Substantial evidence is that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." *Arnold v. Sanstol,* 43 Wn. (2d) 94, 260 P. (2d) 327, citing *Rettinger v. Bresnahan,* 42 Wn. (2d) 631, 257 P. (2d) 633.

The circumstantial evidence bearing upon the point at issue showed the following facts: The barge in question was habitually operated by Jim Turner, the defendant Turner's deceased son, and was used to transport oysters from the seed beds at Blaine to the fattening beds and packing plant at Similk Beach. The loading and unloading operations were supervised by Jim Turner. The barge was in poor condition, with the timbers rotted, large holes in the deck, and the seams in need of caulking. The barge was twenty-four feet wide and sixty-four feet long and was powered from the rear by a marine engine. It was equipped with two bilge pumps and two life preservers. At the time the barge made its last departure from Blaine, it had not been pumped out. It was heavily loaded to one side and had about one foot of free board at the rear and two feet at the front. The deceased Turner had stated he was going to pump it out, which would have given it an additional five inches of free board.

Several employees had been asked to make the trip, but, considering the barge unsafe, they had refused. One witness testified that he had helped defendant Morgan take the barge from Similk Beach to pick up oysters in the fall of 1951.

Employees testified that they always were paid for their services at the end of the shift. On the other hand, the decedent's wages for the work done prior to the fatal accident were paid to his parents after his death. A receipt introduced in evidence for a limited purpose (but not limited by the instructions) reads: "Blaine work last trip— $75.00."

The home of the plaintiffs' deceased son was at Anacortes.

From this evidence, the defendants urge, it is as reasonable to infer that the decedent was aboard the vessel for his own convenience as that he was there for the convenience of his employer.

A verdict cannot be founded on mere theory or speculation. If there is nothing more tangible to proceed upon than two or more conjectural theories, under one or more of which a defendant would be liable and under one or more of which there would be no liability upon him, a jury will not be permitted to resort to conjecture to determine the facts. *Gardner v. Seymour,* 27 Wn. (2d) 802, 180 P. (2d) 564; *Cambro Co. v. Snook,* 43 Wn. (2d) 609, 262 P. (2d) 767. At the same time, the one having the affirmative of an issue does not have to make proof to an absolute certainty. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the matter in question happened in such a way as to fix liability upon the person charged therewith, than it is that it happened in a way for which a person charged would not be liable. *Home Ins. Co. v. Northern Pac. R. Co.,* 18 Wn. (2d) 798, 140 P. (2d) 507, 147 A. L .R. 849; *Cambro Co. v. Snook, supra.*

The fact that the decedent lived near the place for which the vessel was destined, suggests the possibility that he was using the barge merely as a means of transportation. Although he had worked in the Blaine beds in the past, there was no evidence that he had ever made use of it for this purpose before, nor that it was available to employees for transportation. On the other hand, there was evidence that there was work which needed to be done on the barge, that it would have to be unloaded at the fattening beds, and that one of the employers of the decedent had requested others to make the trip. The decedent's pay was withheld until after the trip.

We believe that the jury was justified in finding that the only reasonable inference to be derived from the evidence was that the decedent was aboard the vessel at the request of his employers and for their benefit. Consequently, the trial court erred in granting a judgment n.o.v.

■ The respondents argue, in support of the judgment n.o.v., that the trial court would have been justified in granting their motion upon another ground urged before it, that the evidence was inadequate to prove that the accident was due to the unsafe condition of the barge. They argue that the jury could have just as reasonably inferred that the deaths resulted from other causes. The trial judge's memorandum opinion is enlightening on this point:

"Of course, in this case there were several other factors which could have caused the barge to sink other than defective condition. There could have been a sudden storm or it could have struck some object, but when we consider the condition of this barge after the accident I think perhaps that several of these causes have been ruled out. I believe it is clear from the evidence that this barge did not strike some foreign object. The testimony was that there were no new holes. The condition of the barge after the sinking appears to be the same as it was before the accident. I think the fact that a sudden storm or being swamped by the wake of another vessel, as has been suggested, was not likely in that the evidence showed that the anchor line was overboard and the motors were cut off, and I would think that such facts rule out any sudden immersement situation. In view of those facts I believe that the jury was entitled to find that there was a greater probability that this scow sank as the result of a defective condition."

This summation fairly covers the evidence, and our conclusions in regard to it are in accord with those of the trial court.

It now becomes necessary to decide whether the court correctly granted the alternative motion for a new trial, on the ground that it had erroneously refused to give one of the defendants' requested instructions pertaining to the law of partnership. The instruction refused was taken from RCW 25.04.070, as follows:

". . . persons who are not partners as to each other, are not partners as to third persons."

■ There was no issue of partnership by estoppel between the defendants and the deceased son of the defendant Turner. All of the plaintiffs' evidence was directed toward

the proof of a partnership in fact. Their evidence showed that the defendant Turner was the original owner of the various properties involved in the business operations which were carried on by him and his son and son-in-law, the defendant Morgan. He testified that he had made gifts to them of certain of these properties, or interests therein, but offered no documentary evidence. The son and son-in-law were registered as a partnership with the secretary of state; however, the activities listed in their application, which stated that they were the successors to R. D. Turner, did not include the activity in which the employees were engaged at the time of the fatal accident. There was evidence that R. D. Turner shared in supervising, hiring, and paying the employees, and that he shared in the profits of the oyster business. The evidence was sufficient to justify a finding that the father, son, and son-in-law were partners in fact.

In regard to such partnership, the court instructed the jury as follows:

"You are hereby instructed that a partnership is an association of two or more persons to carry on as co-owners a business for profit.

"You are further instructed that the existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct of the parties.

"While a contract of partnership, either expressed or implied, is essential to the creation of the partnership relation, it is not necessary that the contract be established by direct evidence, but the existence of the partnership may be implied from circumstances, and the acts and conduct of the parties tend to show a joint or common venture. Where it appears that the parties have entered into a business relationship combining their property, labor, skill and experience or some of these elements on the one side, or some on the other, for the purpose of joint profits, a partnership will be deemed established.

"Written articles of agreement are not necessary to constitute a partnership, but a partnership may exist under a verbal agreement or out of an arrangement for a joint business, though the word 'partnership' may not have been used.

152

"In this connection, you are hereby instructed that the burden to prove the existence of a partnership in this case is upon the Plaintiffs."

■ While the requested instruction is not incorrect, the law applicable to the evidence is adequately covered in the instruction given, and it is difficult to see how the jury could have been misled. It was, therefore, error to grant a new trial on this ground.

The order granting the motion for judgment n.o.v. and, in the alternative, granting a new trial is reversed and remanded, with instructions to reinstate the verdict.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.

