[No. 239-2.    Division Two.    June 23, 1971.]

LESTER E. SCHNEIDER, *Appellant,* v. ROWELL'S, INC., *Respondent.*

*Gary R. Eliasen* (of *Merrick, Hofstedt, Schumm & Lindsey*) and *Bradford Gierke* (of *Johnson & Gierke*), for appellant.

*Howard P. Pruzan* (of *Miracle & Pruzan*), for respondent.

PEARSON, J.— This is an appeal from a judgment of dismissal granted at the conclusion of the evidence in a tort case. Since ruling on such a motion involves no element of discretion and all evidence and inferences arising therefrom must be considered in a light most favorable to the nonmoving party, *Hemmen v. Clark's Restaurant Enterprises,* 72 Wn.2d 690, 434 P.2d 729 (1967), *Hunter v. Brown,* 4 Wn. App. 899, 484 P.2d 1162 (1971), we will state the facts in such a light.

The plaintiff is a building contractor who was building a group of fourplexes in Puyallup. He engaged the defendant, Rowell's, Inc., to perform the plumbing work. To avoid construction delays, the parties agreed that one of defendant's plumbers would work on Saturday to install some bathtubs. He was given a key, so that he could unlock the doors to the building. He was the only person shown to have been on the premises on the Saturday involved. A goodly portion of the work to be done involved installation of copper water pipe, predominantly in the "crawl space" under the floor of the building. Joints in copper tubing are fused by a process called "sweating," which involves the heating of pipe fittings with a propane torch and then applying solder to the joints. This process took all morning and a part of the afternoon to complete. During the work, the flame of the torch was often applied to fittings within a few inches of wooden structural components built of fir lumber. After installing the water pipe, the plumber spent about 2 hours installing four bathtubs. When this work was completed, about 4:15 p.m., the plumber returned to the access hole he had used to gain entry under the house, and looked around for any tools he might have left. He did not go to the place where he had actually installed the water-pipe to inspect that area. After looking for tools, the plumber went home for the day, leaving the doors and windows of the building locked. No evidence was introduced of any other person's being in or under the burned building on the day in question.

At 5:52 p.m. the Puyallup Fire Department received a call that a fire was in progress at the building in question. This building was fully involved by the time the firemen arrived and they were forced to direct their efforts to preventing the fire from spreading to other structures nearby. Two expert witnesses testified that the source of the fire was in the area of one of the bathtubs installed by defendant's agent. The depth of char and intensity of the heat indicated that the fire had burned for some time before its discovery—perhaps 1 to 1½ hours. It is possible that a fire

of this sort might smolder for several hours before erupting into open flame, the record discloses. Indeed, the fire inspector testified that it was his conclusion that the fire had started as a result of the plumber's activity in installing the water pipes. There is thus substantial evidence in the record from which the jury could find that the fire was caused by activities of the plumber. We have thus to consider only the problem of whether in causing this fire, the plumber transgressed any duty for the breach of which liability will attach. In other words, having found proximate causation on the record, can negligence be found?

In dismissing the action, the trial court believed that the question of negligence was controlled by *Cambro Co. v. Snook*, 43 Wn.2d 609, 262 P.2d 767 (1953) and that that case required dismissal of plaintiff's claim. We are unable to agree. In *Cambro*, the plaintiff building owner hired the defendant to dismantle metal soapmaking machinery in a building plaintiff intended to convert into a warehouse. The dismantling was to be done by means of acetylene cutting torches. The building was left open to passersby, who could enter through an open door. There was an absence of proof, the court said, that the torch was being used on the day of the fire. Thus, there were two equally conjectural theories, one that the fire was started by use of the torch, and the other that some other agency ignited the flames. We think that this failure of definite proof of causation distinguishes *Cambro* from the instant case. In *Cambro* there were two conjectural theories of causation. In the instant case, there is but one theory and such theory is not conjectural if plaintiff's evidence is believed. We think that this evidence is sufficient to show the element of causation and that liability is a question for the trier of fact if proper evidence of negligence be found. *Grange v. Finlay*, 58 Wn.2d 528, 364 P.2d 234 (1961). We agree with the *Cambro* court that negligence cannot be inferred from the occurrence of a fire when the cause of that fire cannot be shown and that res ipsa loquitur is not appropriate in this circumstance. Causation which is based

upon circumstantial evidence is subject to the well-established rule that the determination may not rest upon speculation or conjecture; and if there is nothing more substantial to proceed upon than two or more conjectural theories, under one or more of which a defendant would be liable, and under one or more of which there would be no liability, a jury is not permitted to speculate on how the accident occurred. *Grange v. Finlay, supra.* Such, we think, is the real rationale of *Cambro* and why it is distinguishable from the instant case.

Since causation, for purposes of the motion now on review, has been shown, we must go beyond *Cambro Co. v. Snook, supra.* The issue becomes one of whether there is evidence of negligence sufficient to take this case to the jury. We think that there is. The record shows, and it seems obvious, that using a propane torch in the vicinity of dry lumber creates a danger of igniting a fire in that lumber. The evidence also shows that such a fire might not be immediately visible, but rather might smolder for some time after its ignition, much like the partially extinguished fire in *Grange v. Finlay, supra.* We think that under these conditions, the plumber had a duty to return to his work site periodically to inspect for flames or evidence of smoldering fires, and especially before leaving at the end of the day's work. This is particularly true where, as here, no other workers are about the premises who might discover evidence of fire in the absence of an inspection by the plumber. Here the plumber testified that he climbed down into the access hole and looked for tools he might have left behind. We think the duty of crawling a few more feet to look for a possible fire is not only reasonable, but is also a matter of common sense. If there is a fire burning that could be discovered and extinguished, but is not, the potential for loss of property and perhaps even life, is very great, as is illustrated by the extent of the harm done in this case. Perhaps the risk of such harm is not great, because such fires are not common. However, if the risk could be substantially lessened by such a simple expedient as periodic

inspections or inspection at the end of the workday, we think that it is negligence not to perform such an inspection. *See Grange v. Finlay, supra; Berkovitch v. Luketa,* 49 Wn.2d 433, 302 P.2d 211 (1956). Whether what the plumber did here is sufficient to meet his duty of inspecting his work place for fire at the end of his workday is, we think, a question for the trier of fact. When the evidence is examined in a light most favorable to the nonmoving party here, evidence of the plaintiff's harm having resulted from a breach of a duty owed to plaintiff by defendant is present. Thus, the granting of a motion to dismiss was error. The case ought to have been submitted to the jury for their consideration.

Reversed and remanded.

PETRIE, C.J., and ARMSTRONG, J., concur.