[No. 476-41821-2.    Division Two.    December 13, 1971.]

THE CITY OF WALLA WALLA, *Respondent,* v. VERA GOSE CONKEY *et al., Appellants.*

*Yancey Reser* (of *Sherwood, Tugman, Gose & Reser*), for appellants.

*James B. Mitchell,* for respondent.

PEARSON, J.—The respondent, City of Walla Walla, commenced a declaratory judgment action, naming as defendants the numerous appellants and others[1] who own prop-

---

[1]Defendant Blalock Irrigation District No. 3 is not a party to this appeal. That municipal corporation was concerned with the declaratory judgment action, which is not directly involved in the appeal.

erty near Mill Creek, some 3 miles west of Walla Walla, and whose property is in close proximity to respondent's sewage treatment plants. Many of the appellants use the waters from Mill Creek and an irrigation ditch known as "Gose Ditch" for farm irrigation purposes. The city has for years been depositing sewage from its treatment plants into Mill Creek and Gose Ditch.

The properties of appellants were benefited by a 1927 decree of the Superior Court for Walla Walla County, which required the city to:

> [D]ischarge, deliver, and return into the bed of the natural channel of Mill Creek  . . .  all of the sewage water and other waters accumulating from time to time in the sewer system of the  . . .  City of Walla Walla, and when the said City of Walla Walla shall treat, purify or otherwise sterilize the sewage of the City of Walla Walla, to then return the purified or sterilized product to said point  . . .  to the end that each of the plaintiffs  . . .  may use the same for irrigation purposes  . . .

The decree also provided that the appellants whose property was served for irrigation by Gose Ditch were entitled to a prior right to 1.77 cubic feet of water per second of time at all seasons of the year.

The city alleged in its complaint that because of increased population and industrial expansion it was now using six wells in addition to the Mill Creek water and that it was now treating sewage waters from various institutions which had not existed in 1927 and which institutions had their own water supply systems. Accordingly, the city claimed that sewage and industrial waste was being created far in excess of the amounts the city could treat and purify, despite the addition of an industrial sewage treatment facility.

The city sought to have the 1927 decree modified, so as to obligate the city to supply the appellants

> only an amount of treated sewage waste that bears the same proportion to the total sewage effluent as plaintiff's [the city's] water right of 22 cubic feet per second of water from Mill Creek bears to the total water supplies

available to plaintiff which contribute to the production of sewage waters.

The appellants filed counterclaims, alleging that their property rights had been unconstitutionally taken through the operation of the city's sewer plants because of noxious odors emanating from the discharge of polluted water into Gose Ditch and Mill Creek. There was testimony at trial that the pollution also caused the appellants' sprinkling systems to become plugged, and covered the creek and ditch beds with a slimy material.

The declaratory judgment action was tried separately to the court and the disposition of that action is not before us.[2] The counterclaims were tried to a jury. At the conclusion of appellants' case, the court granted respondent's motion challenging the sufficiency of the evidence and entered judgments of dismissal from which this appeal is taken.

The dismissal of the counterclaims was granted on two grounds. First, the trial court believed that appellants had not established when the unconstitutional "taking" had occurred. Accordingly, there was insufficient evidence to allow the jury to apply the proper measure of damages, namely, the value of the property immediately before and after the taking. Secondly, the trial court believed that appellants' claims were barred because of more than 10 years of adverse use of or interference with appellants' property rights by the city.

Some additional facts are required to clarify the issues raised on appeal. The following facts were clearly established. (1) Both Gose Ditch and Mill Creek are badly polluted from the sewage and industrial waste and at least since the construction of three vegetable processing plants in 1932, 1935 and the late 1940's, the respondent has been

---

[2]The declaratory judgment action was disposed of, in part, as follows. On September 27, 1971, the Honorable Ross Rakow entered an order which, in part, allows the City of Walla Walla a reasonable time in which to improve its sewage treatment facilities, so as to purify and sterilize the effluent which it deposits into Mill Creek and Gose Ditch, and thus to comply with pollution control requirements of the state and federal government.

unable to properly treat the sewage, with the result that foul, noxious odors interfere with appellants' property for 3 or 4 months in the summer. (2) The intensity of the odor depends upon the size of the particular season's "pea pack" as well as the wind direction and heat on a given day. At least two of the appellants testified that some of the odor comes directly from the sewer plants as well as from the creek and ditch. (3) In the summer months, the source of water of Mill Creek downstream from respondent's sewage plants is almost entirely what the plants discharge or bypass. (4) The only source of Gose Ditch water during the entire year is what the plants discharge or bypass.

Appellants all testified that the odors emanating from Mill Creek and Gose Ditch were worse in the 1960's than previously, and that the odors became so noxious that all social activity had to be limited during the period from mid-June to late September. There was also testimony that in June and July (during the mid-1960's) the intake into the plants increased to as much as 8 million gallons per day on some days, and that since 1966 the city has bypassed much of the industrial waste without any treatment whatsoever. Usually any volume of industrial waste over 3 million gallons a day was bypassed into Mill Creek and Gose Ditch in those 2 months. The amount of untreated sewage and industrial waste reached its peak between 1966 and 1968.

A challenge to the sufficiency of the evidence can involve no element of discretion. It admits the truth of appellants' evidence and allows appellants the benefit of all favorable inferences to be drawn therefrom. Evidence with more than one reasonable inference must be construed most strongly against the moving party. *Schneider v. Rowell's, Inc.,* 5 Wn. App. 165, 487 P.2d 253 (1971); *Hemmen v. Clark's Restaurant Enterprises,* 72 Wn.2d 690, 434 P.2d 729 (1967).

The questions raised on appeal are these. (1) Have respondent's actions in dumping raw and partially treated waste matter into Mill Creek and Gose Ditch, causing nox-

ious odors, clogging irrigation sprinklers, and so forth, constituted a constitutional taking of appellants' property, requiring constitutional compensation? (2) Was it necessary for appellants to prove the exact time of "taking" so as to permit a factual determination of damages, and if so, was the offered evidence sufficient to make a prima facie case? (3) Does the statute of limitations applicable to adverse prescription apply to the type of constitutional taking or damaging which occurred in this case?

■ There is no question that pollution of a stream by a municipality in carrying out its sewage disposal functions constitutes a constitutional taking, where the disposal results in pollution of the stream on such a scale as to create a public nuisance. *Snavely v. Goldendale,* 10 Wn.2d 453, 117 P.2d 221 (1941).

2 J. Sackman, Nichols on Eminent Domain § 5.795 (2) (3d ed. 1970) states at page 5-383:

> When a city or town gathers the sewage of its inhabitants and pours it into a private watercourse there is a serious impairment of the enjoyment of riparian rights and the injury resulting therefrom undoubtedly constitutes a "damage", but whether such injury is of such a character as to constitute a "taking" is not entirely clear. In a few states it is held that a lower riparian owner upon a private watercourse is not entitled to compensation for the pollution of the water by a municipal sewer system. But the weight of authority favors the principle that the court cannot balance the public convenience and inconvenience; that the pollution of a stream by sewage or for any other public purpose is a taking of property in the constitutional sense and that it cannot be effected without compensation.

(Footnotes omitted.)

We thus conclude that there was clearly established a prima facie case of an inverse condemnation in the nature of a taking, which occurred as a result of the city's sewage disposal activities. *Aliverti v. Walla Walla,* 162 Wash. 487, 298 P. 698 (1931). For a similar result where the municipality through operation of an airport has extensively interfered with the use and enjoyment of nearby property,

see *Martin v. Port of Seattle,* 64 Wn.2d 309, 391 P.2d 540 (1964).

We now turn to the question of whether appellants established a prima facie case of damages which are not barred by the applicable statute of limitations. In their attempt to prove damages, appellants introduced testimony from a qualified appraiser who described the decline of market value because of the pollution for the years 1962, 1965 and 1970 (the time of the trial). Respondent contends and the trial court ruled that the depreciated values on these dates had no probative value because appellants had not established the time of the constitutional taking. Appellants contend that damages for a constitutional taking are to be established at the time of trial.

Respondent city also argues persuasively and the trial court ruled that the evidence showed a long history of pollution dating back to the 1920's, with gradual aggravations in the 1930's and 1940's when vegetable processing plant residue was added to the city sewage disposal system. Respondent urges that the prescriptive use period had long since established the city's rights to interfere with the use and enjoyment of appellants' property. This argument would persuade us were it not for the undisputed fact that it was not until the 1960's that the city started accepting large quantities of industrial waste which its plants could not properly treat, to the end that sewage and industrial waste were deposited into Mill Creek and Gose Ditch with no treatment at all.

Earl Anderson, the Walla Walla sewage treatment plant supervisor, testified that the city opened an industrial sewage plant in 1962 and commenced accepting for treatment large quantities of industrial waste. He testified that the treatment was only partially successful and that from then on to 1966 there was an industrial overload, with the result that Mill Creek and Gose Ditch were seriously polluted with partially treated sewage. In June of 1966 the city accepted an overabundance of industrial wastes and commenced bypassing the effluent, with the effect that millions

of gallons of raw, untreated sewage were deposited in Mill Creek thereafter.

■ The unique problems presented in the inverse condemnation situation are exemplified by the two rulings made by the learned trial judge in dismissing the cross complaints. They are these. When did the interference with the use and enjoyment of appellants' property reach the proportions where the law recognizes that a "taking" in the constitutional sense has occurred? It is necessary to answer that question because when an inverse condemnation has occurred, the right to claim compensation must be asserted within 10 years of the "taking." In *Ackerman v. Port of Seattle,* 55 Wn.2d 400, 405, 348 P.2d 664 (1960), the rule was aptly stated:

> We have held that an action for constitutional taking is not barred by any statute of limitations and may be brought at any time before title to the property taken is acquired by prescription. The prescriptive period in this state has been held to be ten years. [Citing cases.]

It is also necessary to ascertain the time the taking has occurred because the measure of compensation is usually determined at that time. Again, in *Ackerman v. Port of Seattle, supra* at 413 the rule was announced that damages for an inverse condemnation would be "the difference between the value of their property before the airport was *extensively used* and the value thereafter, plus interest from that date." (Italics ours.) To the same effect, *see Anderson v. Port of Seattle,* 66 Wn.2d 457, 403 P.2d 368 (1965).

These unique and difficult problems of inverse condemnation have been explored extensively by the Supreme Court in a series of cases precipitated by expansion and development of the Seattle-Tacoma Airport as a major international facility. *Anderson v. Port of Seattle,* 49 Wn.2d 528, 304 P.2d 705 (1956); *Ackerman v. Port of Seattle, supra; Cheskov v. Port of Seattle,* 55 Wn.2d 416, 348 P.2d 673 (1960); *Martin v. Port of Seattle,* 64 Wn.2d 309, 391 P.2d 540 (1964); *Anderson v. Port of Seattle,* 66 Wn.2d 457,

403 P.2d 368 (1965). Those cases involved suits by property owners adjacent to or near the developing airport who claimed a decline in land values primarily because of the noise from an increasing volume of low-flying aircraft.

The reason for allowing eminent domain relief in the airport noise cases was discussed at length in *Martin v. Port of Seattle, supra,* and we will not repeat it here, other than the brief statement of judicial policy which appears at page 319: "When the land of an individual is diminished in value for the public benefit, then justice, and the constitution, require that the public pay."

■ We view the policies and problems of the interference with the use and enjoyment of property by noxious odors and water pollution caused by the municipality's sewage disposal system, strikingly similar to the airport cases. Remedies of trespass or nuisance are largely inappropriate. *Martin v. Port of Seattle, supra.* There is no less reason to allow the property owners in this case the decline in market value of their property than in the airport noise cases. The harm is only different in kind. However, there is one marked distinction in the two types of cases and we must determine whether that distinction is sufficient to call for a different application of the rules cited above. That difference has to do with the permanence of the damages caused by the acts of the municipality.

In the airport cases, there is little likelihood that the airplane noise will ever be abated, unless, of course, the genius of American technology develops the noiseless aircraft. However, when it comes to sewage pollution of air and water, there is a compelling and urgent necessity for municipal governments to solve that problem; and in fact, the City of Walla Walla has been required by court order to deliver effluent from its treatment facilities, meeting purity standards set by either the state or federal government. In the event such order is complied with, appellants' market value decline may be minimized. Therefore, to assess damages, as is done in the airport case, at the time *extensive* use has been established, would be unfair to the

public who in all likelihood will also bear the cost, as it ultimately must, of treatment facilities sufficient to reduce or eliminate the air and water pollution. Such a result could also be grossly unfair to the property owner in cases where the pollution is allowed to worsen as the city grows and develops industrially.

We also point out that where inverse condemnation by air and water pollution has taken place, the degree of harm, as demonstrated by the facts of this case, is seasonal and subject to wide variations from month to month or from year to year. The variations are affected by (1) the weather, (2) the amount of industrial wastes or sewage discharged, and (3) the effectiveness of the treatment facilities. Accordingly, a determination of damages at some unpredictable time in the past will neither accurately measure the loss to a particular property owner, nor will it enable him to guess with any degree of accuracy *when* the jury will determine that his property rights have been taken.[3] This will make it necessary for him to place before the jury numerous obsolete evaluations of the decline in market value, to the confusion of the jury, when the interests of justice would best be served by a determination of the current effect the pollution has on the market value of the land involved.

Accordingly, it is our view that in this unique type of inverse condemnation, damages should be measured as the decline in market value at the time of trial. Such rule is consistent with the rule which pertains in normal condemnation cases. *State v. Williams,* 68 Wn.2d 946, 416 P.2d 350 (1966). Such rule is also consistent with the analysis which appears in 4 J. Sackman, Nichols on Eminent Domain (3d ed. 1971) at § 12.23(3):

> The rule that damages are to be assessed as of the date of the taking does not contemplate a physical taking not

[3] This is the difficulty inherent in the rule announced in *Ackerman v. Port of Seattle,* 55 Wn.2d 400, 348 P.2d 664 (1960), and more recently in *Anderson v. Port of Seattle,* 66 Wn.2d 457, 403 P.2d 368 (1965), but in any event, we deem those cases distinguishable for the reasons set forth above.

sanctioned by law, but a taking by appropriate legal proceedings. Consequently, if a corporation invested with the power of eminent domain takes possession of private property in advance of condemnation proceedings, it cannot insist that compensation be fixed as of the date of the unlawful entry, instead of the date which the law ordinarily prescribes.

(Footnote omitted.)

This statement of principle was approved in both *Anderson v. Port of Seattle*, 49 Wn.2d 528, 304 P.2d 705 (1956) and *Cheskov v. Port of Seattle, supra*. In the latter case, the Supreme Court, after quoting the above passage from Nichols, stated at page 421: "In a proper case it might well be found that damages should be determined as of a later date, but that does not affect the date of accrual of the cause of action."

Such rule was recognized in many early cases. In *Wilshire v. Seattle*, 154 Wash. 1, 6, 280 P. 65 (1929) the court stated:

This court has held that, in case possession of land is taken prior to the initiation of condemnation proceedings, the compensation to the owner, based upon the market value of the land, is to be determined as of the date of trial, and not as of the date possession was taken. [Citing cases.]

We are of the opinion that such rule is workable and fair when applied to inverse condemnation by air and water pollution. Since appellants' evidence showed the decline in market value as of the time of trial, we conclude that a prima facie case was made on the issue of damages.

However, because of the city's claim of adverse prescription, we do think it was necessary for appellants to establish a prima facie case that substantial or extensive pollution occurred within 10 years prior to the commencement of the actions, which was different in kind or substantially greater in degree when that which existed before that period commenced. *Cheskov v. Port of Seattle, supra*.

We think there was sufficient evidence from appellants' witnesses and from respondent's plant supervisor to create

an issue of fact for the jury. The pollution worsened in the early 1960's and became severe in the mid-1960's when sewage without treatment was deposited in Mill Creek in great quantities.

Consequently, the jury should have been allowed to make that factual determination under instructions to the effect that, to recover, appellants must establish by a preponderance of the evidence that the damage to their property had, within 10 years prior to the commencement of the action, differed substantially in kind or was substantially greater in degree than it had been prior to the commencement of that period. *See Ackerman v. Port of Seattle, supra; Cheskov v. Port of Seattle, supra; Anderson v. Port of Seattle,* 66 Wn.2d 457, 403 P.2d 368 (1965).

We think the trial court should also submit to the jury the question of which of the appellants, if any, acquired his property *after* the time of "taking." No damages should be allowed any appellant found to have acquired his property for a price commensurate with its diminished value. Such parties should not be entitled to recover damages which they did not, in fact, sustain, even though the current market value of their land may be less than it would be without the pollution.

Reversed and remanded.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied January 31, 1972.

Review denied by Supreme Court April 24, 1972.