**Mary L. CLARK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 631–84L.**

United States Claims Court.

Aug. 15, 1985.

G. Lee Raaen, Seattle, Wash., attorney of record, for plaintiff; Raaen & Dionne, Seattle, Wash., of counsel.

Dorothy R. Burakreis, Washington, D.C., with whom was Asst. Atty. Gen. S. Henry Habicht, II, Washington, D.C., for defendant.

## OPINION ON DEFENDANT'S MOTION TO DISMISS *

PHILIP R. MILLER, Judge:

In this suit, plaintiff seeks just compensation under the Fifth Amendment to the Constitution for damages resulting from the contamination of the water supply to her residence by the United States Air Force.

The complaint alleges the following: Plaintiff owns and resides on property located in Pierce County, Washington, adjacent to the McChord Air Force Base. The United States Air Force has caused or allowed dangerous chemicals and other contaminants to flow from a waste dump at McChord Air Force Base into plaintiff's water supply, causing her water supply to become dangerous and unsafe for human and animal consumption. This contamination of her water supply has diminished the market value of her property, causing damages of $550,450.

The government contends in its motion that this court does not have jurisdiction over this suit because plaintiff's complaint alleges at most a tort. To support its contention that plaintiff's complaint does not rise to the level of a constitutional taking, defendant has submitted the affidavit of Major Patrick Fink, who is familiar with the Air Force investigation of the ground water contamination in the vicinity of McChord Air Force Base. In his affidavit, Major Fink concedes that plaintiff's property is part of a tract which is eligible for cleanup of ground water contamination by the Environmental Protection Agency (EPA), and states that pursuant to an agreement between the Department of Defense and EPA, site cleanup responsibility was assigned by EPA to McChord Air Force Base. He further states that the Air Force is currently supplying bottled drinking water to residents of the affected tract while investigating the contamination for the purpose of providing plaintiff, and other residents in the area, with an alternate source of drinking water free from contamination by volatile organic compounds.

Plaintiff counters with her own affidavit, which states that she has been told by the EPA and the county health department that she should not use the well water which supplies her residence because it has been contaminated with dangerous chemicals. Since she received this notice, she states, she has been unable to use her well water for "drinking, bathing, cooking, washing dishes, or other household uses." For more than a year she was required to

---

* Although defendant designates its motion a motion to dismiss, this is obviously a misnomer, as it is a speaking motion supported by an affidavit of facts outside the complaint. Accordingly, pursuant to RUSCC Rule 12(b), the motion is treated herein as one for *summary judgment*.

haul water from her daughter's residence miles away. Although the Air Force is now providing bottled drinking water, she is still required to bathe and do her laundry at her daughter's home. She asserts that EPA representatives told her the contamination of her water supply is coming from McChord Air Force Base. She further states from personal knowledge that for years the Air Force has operated open pit dumpts on its property for the disposal of waste chemicals, fuel and other materials. Finally, she states that she was told by the Base Commander of McChord Air Force Base, Colonel Martin, that: as of March 20, 1985, the Air Force had not as yet begun its study of the feasibility of installing a new water supply; as of this date no decisions had been made regarding the actual construction and maintenance of an alternate water supply system; and, the alternate water supply system would contain certain limitations which would prevent full restoration of the use of her property.[1] Still further there is no plan to clean up the existing contamination.

█ The tests to be applied in determining whether governmental action destructive of the value of private property is a taking or merely a tort are: whether the actions of the government officials were authorized (*United States v. North American Co.*, 253 U.S. 330, 333, 40 S.Ct. 518, 519, 64 L.Ed. 935 (1920); *Southern California Financial Corp. v. United States*, 225 Ct.Cl. 104, 108, 634 F.2d 521, 523 (1980), *cert. denied*, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981); *NBH Land Co. v. United States*, 217 Ct.Cl. 41, 44–45, 576 F.2d 317, 319–20 (1978); whether the actions which caused the loss to plaintiff's property were deliberate or intentional (*Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 770, 572 F.2d 786, 818 (1978); *Columbia Basin Orchard v. United States*, 132 Ct.Cl. 445, 450, 132 F.Supp. 707, 709 (1955); *Berenholz v. United States*, 1 Cl.Ct. 620, 627 (1982), *aff'd*, 723 F.2d 68 (Fed.Cir.

1983)); whether the invasion of plaintiff's property was a natural, probable or foreseeable consequence of the governmental acts (*Barnes v. United States*, 210 Ct.Cl. 467, 476, 538 F.2d 865, 871 (1976); *Pete v. United States*, 209 Ct.Cl. 270, 298–99, 531 F.2d 1018, 1035 (1976); *Columbia Basin Orchard, supra*, 132 Ct.Cl. at 450, 452, 132 F.Supp. at 709, 711; and whether the injury to plaintiff's property is relatively permanent or indefinite, or although intermittent is likely to be recurring, rather than random (*Wilfong v. United States*, 202 Ct.Cl. 616, 622, 480 F.2d 1326, 1329 (1973); *Fromme v. United States*, 188 Ct.Cl. 1112, 1119, 412 F.2d 1192, 1196–97 (1969); *Berenholz, supra*, 1 Cl.Ct. at 626).

Defendant does not contend that the disposition of the harmful waste products by dumping in the open pits on the McChord Air Force Base was beyond the scope of the authority of the commanding officer at the base, nor does it contend that such dispositions were unintentional. It does not allege that it has shown beyond any dispute that plaintiff's property has not suffered a loss in value due to the noxious chemical residues and contaminants in its soil and underground waters, nor, even if the damage to the soil can be repaired, that plaintiff has not suffered a loss due to a temporary invasion of her property over a one or two year period.

█ Defendant argues that "the invasion of any property interest of plaintiff by contamination of ground water is not *necessarily* permanent, nor inevitably recurring." [Emphasis supplied.] Defendant apparently misconceives the issue. It is defendant, not plaintiff, which is demanding summary judgment. In resisting defendant's motion, plaintiff is merely asking that she not be foreclosed from proving at trial that she has suffered a taking of her property rather than merely a tort.

---

1. In its brief defendant moves to strike the various portions in plaintiff's affidavit, which contain statements of government officials to plaintiff, as inadmissible hearsay evidence. Defendant's motion is denied, as the statements of United States government officials concerning a matter within the scope of their employment are not hearsay. Fed.R.Evid. 801(d)(2).

If plaintiff can prove at trial that seepage from the government's chemical dump renders her water supply useless for residential purposes, this may render the entire property unusable as a residence. Alternatively, she may be able to prove the taking of an easement in the property or its subjection to a servitude which partially destroyed its value. This would entitle her to damages under the Fifth Amendment. *See U.S. v. Causby,* 328 U.S. 256, 261, 66 S.Ct. 1062, 1065, 90 L.Ed. 1206 (1946); *Ortega Cabrera v. Municipality of Bayamon,* 562 F.2d 91, 101 (1st Cir.1977); *Ball v. United States,* 1 Cl.Ct. 180 (1982); *City of Walla Walla v. Conkey,* 6 Wash.App. 6, 492 P.2d 589, 592 (1971); and *see generally* 2 Nichols' Law of Eminent Domain § 5.39[2] (Rev.Third Ed.1983). Even if the Air Force provides plaintiff with an alternate source of water, it is still possible that plaintiff may prevail in this action on a theory of a temporary taking. *Yuba Goldfields v. United States,* 723 F.2d 884, 888 (Fed.Cir. 1983). *Eyherabide v. United States,* 170 Ct.Cl. 598, 345 F.2d 565 (1965). In addition, the government has not demonstrated that its proposed remedial actions will make the plaintiff whole. If, as appears, the affidavits submitted indicate that an issue of fact exists relevant to the question of whether or not the government has taken plaintiff's property and the extent thereof, this factual dispute should not be decided on a dispositive motion but should be considered only after trial.

The government, in its opening brief, argued that 28 U.S.C. § 1500 also deprived this court of jurisdiction over this suit because plaintiff, after initiating this suit, filed a complaint asking for damages under the Federal Tort Claims Act in the United States District Court for the Western District of Washington.[2] The government contended that section 1500 was applicable because both the suit in this court and the suit filed in the district court concern the contamination of plaintiff's water supply. In its supplemental filing pursuant to this

court's order of July 9, 1985, however, defendant conceded that section 1500 is inapplicable because section 1500 only applies where a suit is filed in the district court prior to the filing of a complaint in this court. *Tecon Engineers, Inc. v. United States,* 170 Ct.Cl. 389, 343 F.2d 943 (1965), *cert. denied,* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966).

Finally, the government argues that the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* (1982), provides the only remedy for the contamination of water with hazardous chemicals and other pollutants. This argument fails for two reasons. First, 42 U.S.C. § 9652(d) states that "[n]othing in this chapter shall effect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants." And CERCLA provides that federal agencies are subject to all of the provisions of the Act, including the liability provisions, to the same extent as non-governmental entities. 42 U.S.C. § 9607(g) (1982). Second, nowhere in this CERCLA has Congress withdrawn the Tucker Act grant of jurisdiction to hear a suit founded upon the constitutional right just when the government releases noxious chemicals into an individual's water supply. See *Ruckelshaus v. Monsanto Co.,* —— U.S. ——, ——, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815 (1984); and *Whitney Benefits, Inc. v. United States,* 752 F.2d 1554, 1556 (Fed.Cir. 1985).

For the foregoing reasons, defendant's motion to dismiss the complaint is denied. Defendant is to file its answer within 10 days after notice of this decision, as required by RUSCC Rule 12(a).

---

**2.** 28 U.S.C. § 1500 provides in pertinent part: The United States Claims Court shall not have jurisdiction of any claim * * * in re-

spect to which the plaintiff * * * has pending in any other court any suit or process against the United States * * *.