**U.S. HOME CORPORATION, Beechwood at Edison, LLC, Beechwood Shopping Center, LLC, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 09–63 C.

United States Court of Federal Claims.

April 15, 2010.

Lee Henig–Elona, West Orange, NJ, for plaintiffs.

Kenneth D. Woodrow, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Alan J. Lo Re, Assistant Director, Washington, DC, for defendant.

## OPINION

BUSH, Judge.

Before the court is defendant's motion to dismiss plaintiffs' amended complaint. Defendant relies on Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). Oral argument

was neither requested by the parties nor deemed necessary by the court. For the reasons set forth below, defendant's RCFC 12(b)(1) motion is denied in part and granted in part, and the court defers ruling on defendant's RCFC 12(b)(6) motion, which is converted to a motion for summary judgment.

## BACKGROUND[1]

### I. Real Property Acquired from the United States and Allegations of Contamination by Hazardous Materials

Plaintiffs U.S. Home Corporation, Beechwood at Edison, LLC and Beechwood Shopping Center, LLC (collectively, the Developers) are the current owners of approximately 29 acres of real estate (the Property), which was at one time part of the former Raritan Arsenal, a 3200-acre United States Army facility in New Jersey.[2] Compl. ¶¶ 1-3. The United States General Services Administration (GSA) sold one of the two constituent parcels of the Property, approximately 23 acres, to TWC Realty Company (TWC) at a public auction in 1989. Id. ¶ 7. TWC then sold this parcel to Beechwood at Edison, LLC in 2002. Id. GSA sold the second constituent parcel of the Property, approximately 5 acres, to Beechwood at Edison, LLC in 2003. Id. Beechwood at Edison, LLC consolidated and subdivided the Property, conveying part to U.S. Home Corporation in 2005 and 2008, and part to Beechwood Shopping Center, LLC at a later date. Id. ¶ 8. Both residential development and commercial development of the Property have commenced.

According to plaintiffs, hazardous waste contamination of the Property was discovered in 2005 and 2006, and various local and state officials compelled plaintiffs to alter their development plans for the Property as a result. Compl. ¶¶ 42-45, 47, 57, 59, 62-63. The Developers have incurred and will incur expenses related to soil capping and venting measures, as well as the installation, monitoring and maintenance of engineering controls. Id. ¶¶ 59, 61-63. Plaintiffs also assert that the contamination of the Property has reduced the value of the Property and has caused other monetary damages, such as those related to construction delays, financing costs, sales price reductions, lost sales and lost rental income. Id. ¶¶ 58, 74-75, 77-78, 82-84. Plaintiffs assert that the United States contaminated the Property and made promises to the Developers as to the environmental condition of the Property, promises upon which plaintiffs reasonably relied. Pls.' Opp. at 1-2.

### II. Plaintiffs' Suit in the District Court

Two of the plaintiffs in this suit, U.S. Home Corporation and Beechwood at Edison, LLC, filed a complaint against the United States in the United States District Court for the District of New Jersey on August 15, 2008. U.S. Home Corp. v. United States, No. 2:08-cv-04144-WJM-MF (D.N.J. filed Aug. 15, 2008). The complaint filed in the district court originally sought relief related to the contamination of the Property through eight different counts. Plaintiffs voluntarily dismissed six of the counts in the district court complaint and curtailed the relief requested through the remaining two counts, in response to the government's "Motion for Partial Dismissal of Complaint and to Strike Claims for Relief." See U.S. Home Corp. v. United States, No. 2:08-cv-04144-WJM-MF (D.N.J. Jan. 5, 2009) (dismissing six counts of the complaint and striking certain prayers for relief). Three of the counts of the district court complaint that were dismissed without prejudice were later filed in this court and will be discussed infra.

As of January 5, 2009, the district court plaintiffs sought relief through the remaining two counts of their complaint, both founded on the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601-9675

---

1. The facts recounted here are taken from the parties' filings, and appear to be undisputed for the purpose of resolving defendant's motion to dismiss. The court makes no findings of fact in this opinion.

2. Although Beechwood at Edison, LLC is no longer an owner of the Property, having conveyed the two parcels making up the Property to U.S. Home Corporation and Beechwood Shopping Center, LLC, Beechwood Shopping Center, LLC is an affiliate of Beechwood at Edison, LLC. Compl. ¶ 2.

(2006). In particular, plaintiffs relied on CERCLA § 107(a)(2)-(3), 42 U.S.C. § 9607(a)(2)-(3), to seek reimbursement from the United States for the monies they had expended to respond to the contamination of the Property.[3] Plaintiffs, relying on CERCLA § 1 13(g)(2), 42 U.S.C. § 9613(g)(2), also sought a declaratory judgment as to the liability of the United States for past and future response costs incurred by the owners of the Property. Lastly, plaintiffs sought attorney's fees and the costs of the litigation in district court, as well as prejudgment interest. According to plaintiffs, a settlement of the district court action is being negotiated by the parties. Pls.' Opp. at 26 n. 9.

### III. Plaintiffs' Amended Complaint in this Court

On February 3, 2009, the Developers filed a complaint in this court against the United States seeking damages related to the hazardous waste contamination of the Property. The complaint, as later amended, contains three counts, none of which rely on CERCLA § 107 or § 113. Instead, Count I of the complaint relies first on certain covenants of the 2003 deed, which conveyed part of the Property from GSA to Beechwood at Edison, LLC. This breach of contract claim is clearly referred to as a "Breach of Covenants." Compl. at 19. Another part of Count I less clearly references the government's "representations," "assurances" and "numerous and express promises." *Id.* ¶¶ 92–93. Plaintiffs have described this claim as alleging a breach of an implied-in-fact contract between the United States and the Developers as to the environmental condition of the Property.[4] Pls.' Opp. at 19–22. The prayer for relief in Count I specifically indicates that any response costs sought by plaintiffs consist of "[c]osts of response not otherwise awarded in the CERCLA action [in district court]."

Compl. ¶ 20. In the prayer for relief in Count I, plaintiffs also enumerate other categories of damages related to the contamination of the Property, including costs of delay, overhead, diminution in value, stigma, damage to reputation and "[c]ompensatory damages." *Id.* Finally, plaintiffs seek prejudgment interest and the costs of their suit in this court.

The second and third counts of the complaint in this court rely on CERCLA § 120(h), 42 U.S.C. § 9620(h), for the duties CERCLA imposes on the federal government as a transferor of real property. According to Count II of the complaint, defendant did not provide the notice of contamination required by CERCLA § 120(h) as it sold the constituent parcels of the Property.[5] In Count III, plaintiffs allege that the government failed to investigate the Property for hazardous waste contamination, failed to consult with state officials as to the results of any hazardous waste assessment of the Property, and failed to remediate any contamination of the Property, as required by CERCLA § 120(h). The prayers for relief in Counts II and III are identical to the prayer for relief in Count I. In essence, in Counts II and III plaintiffs seek money damages for violations by the United States of CERCLA § 120(h), pled as an alternative legal theory to supplement their breach of contract claims.

### DISCUSSION

### I. Jurisdiction

The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (2006). This statute "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States...." *Fisher v. United States*, 402

---

**3.** "Response costs," in the context of this controversy, refer to the costs of efforts to contain or otherwise remediate the hazardous waste contamination of the Property.

**4.** It is unclear from plaintiffs' brief whether they regard this implied-in-fact contract to concern only the parcel conveyed by the 1989 deed to TWC and now owned by Beechwood Shopping Center, LLC, or to the entire Property. The

distinction is immaterial to the court's consideration of defendant's 12(b)(1) challenge to the complaint.

**5.** It is unclear from the complaint whether Count II concerns only the 2003 sale of part of the Property, or both the 1989 and 2003 sales by GSA. This distinction is also immaterial to the court's consideration of defendant's 12(b)(1) challenge to the complaint.

F.3d 1167, 1172 (Fed.Cir.2005) (*en banc*) (citations omitted). These include claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

The Tucker Act concurrently "waives the Government's sovereign immunity for those actions." *Fisher*, 402 F.3d at 1172. The statute does not, however, create a substantive cause of action or right to recover money damages in the Court of Federal Claims. *Id.* "[T]o come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id.* In other words, the source underlying the cause of action must be money-mandating, in that it " 'can fairly be interpreted as mandating compensation by the Federal Government. . . .' " *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967) and citing *Mosca v. United States*, 189 Ct.Cl. 283, 417 F.2d 1382, 1386 (1969)). If the provision relied upon is found to be money-mandating, the plaintiff need not rely upon a waiver of sovereign immunity beyond the Tucker Act. *Huston v. United States*, 956 F.2d 259, 261 (Fed.Cir.1992) (citing *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)).

## II. Standards of Review

### A. RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.

Cir.1988). The relevant issue in a motion to dismiss under RCFC 12(b)(1) " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Patton v. United States*, 64 Fed.Cl. 768, 773 (2005) (quoting *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461–62 (Fed.Cir. 1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed.Cir.2002). "Indeed, the court may, and often must, find facts on its own." *Id.* If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

### B. RCFC 12(b)(6)

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir.2002). When considering a motion to dismiss under this rule, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is warranted under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). If matters outside the pleadings are considered by the court, a motion to dismiss under RCFC 12(b)(6) must be converted to a motion for summary judgment under RCFC 56 and reviewed under that rule. *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1164 (Fed.Cir.1993)

(holding that the standard for a motion for summary judgment applies when matters outside the pleadings are considered by a court disposing of a 12(b)(6) motion).

## III. Analysis

Defendant contests the court's jurisdiction over all three counts of the amended complaint. Defendant also suggests that Count I of the complaint fails to state a claim upon which relief may be granted. Defendant attached to its motion copies of the 1989 and 2003 deeds of sale concerning the real estate at issue in this suit. Plaintiffs also provided copies of these deeds in the appendix to their opposition to defendant's motion, along with thirty-four other exhibits.

The parties rely extensively on the language of these attachments and exhibits in support of their RCFC 12(b)(6) arguments, and the court cannot consider the merits of these arguments without considering the documents themselves. These materials outside the pleadings thus require the court to convert defendant's RCFC 12(b)(6) challenge to the complaint to a motion for summary judgment. *See* RCFC 12(d) ("If, on a motion under RCFC 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56."); *see also Advanced Cardiovascular*, 988 F.2d at 1164 (vacating a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) where the trial court had considered materials outside the pleadings, because in those circumstances "the rules governing summary judgment must apply"). The court must provide the parties an opportunity to litigate defendant's 12(b)(6) challenge through the procedures afforded by RCFC 56. *See* RCFC 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *see also Levy v. United States*, 10 Cl.Ct. 602, 606 (1986) (allowing the parties in a real estate sale breach of contract suit to supplement initial briefing on a motion to dismiss, to which defendant had attached exhibits related to the real estate

sale, with "additional legal argument and materials in support of, or opposition to, summary judgment"). For this reason the court will restrict its consideration of defendant's motion to those arguments related to this court's jurisdiction, and reserves defendant's RCFC 12(b)(6) challenge to the complaint for further proceedings.

### A. Count I—Breach of Contract Claims

#### 1. Breach of Covenants in the 2003 Deed

Plaintiffs' first breach of contract claim arises from covenants in the 2003 deed. Three covenants in the 2003 deed are specifically cited in the complaint: (1) " 'the United States gives notice that no hazardous substances have been released or disposed of or stored for one year or more on the Property' "; (2) " 'all remedial action necessary to protect human health and the environment has been taken before the date of this conveyance' "; and, (3) " 'Grantor warrants that it shall take any additional response action found to be necessary after the date of this conveyance regarding hazardous substances located on the Property on the date of this conveyance.' " Compl. ¶ 39; Pls.' App. Tab 32 at 2. These covenants, which address the environmental condition of the parcel, gave notice to the grantee that the United States set forth these covenants pursuant to CERCLA § 120(h). Pls.' App. Tab 32 at 2. The 2003 deed also contains language which could act to limit the scope of the "CERCLA Covenant[s]," language which is irrelevant to the jurisdictional question now before the court.[6] *Id.*

It is undisputed that this court possesses jurisdiction over breach of contract claims brought against the United States. *See, e.g., Brighton Vill. Assocs. v. United States*, 52 F.3d 1056, 1059 (Fed.Cir.1995) (holding that this court has jurisdiction over claims "for breach of an express contract"). It is also undisputed that a real estate deed granted by the federal government is an

---

6. The 2003 deed includes both a general " 'as is' and 'where is' " disclaimer of any warrantees as to the condition of the parcel not "fully set forth in this Deed," as well as specific language delimiting the government's responsibilities under the CERCLA covenants. Pls.' App. Tab 32 at 2–3.

express contract that confers jurisdiction to this court for a breach of contract claim based on that deed. *See, e.g., Coggeshall Dev. Corp. v. United States*, 23 Cl.Ct. 739, 743 (1991) (assuming jurisdiction over breach of contract claims founded upon express promises in a real estate deed). Defendant, despite the clear grant of jurisdiction to this court over contract claims, nonetheless insists that the CERCLA covenants in the 2003 deed cannot provide this court with jurisdiction over an action for breach of contract.

Defendant's jurisdictional arguments are convoluted and, in the end, unpersuasive. As an initial proposition, defendant suggests that to the extent any warrantees of the environmental condition of the Property were offered by the government in the 2003 deed, these warrantees limit the government's liability to response costs, and cannot be construed to provide a right to money damages. Def.'s Mot. at 9–10. Defendant appears to be arguing that CERCLA remedies are the exclusive remedies available to plaintiffs in this breach of contract claim. *See id.* at 8 ("The sole remedy for the breach of that [CERCLA] warranty is the remediation of the contamination by the United States." (citing CERCLA § 120(h)(3)(A)(iii))).

Defendant also relies upon the constraints on this court's jurisdiction imposed by 28 U.S.C. § 1500 (2006). The government contends that any relief available in this court for breach of the CERCLA covenants in the 2003 deed is coextensive with the response costs sought in the district court CERCLA suit, and that plaintiffs' suit in this court is thus barred by § 1500. Def.'s Reply at 8–9. The court turns first to the question of whether, as a jurisdictional matter, deed covenants required by CERCLA necessarily limit the obligations of the government to the response costs available in a CERCLA suit, thereby excluding breach of contract remedies traditionally available in this court.

### a. CERCLA Does Not Provide an Exclusive Remedy

There is very little caselaw discussing, from a jurisdictional perspective, whether CERCLA remedies must displace contract remedies normally available under the Tuck-er Act, but there is some commentary worth noting. This court has held, for example, that a landowner may simultaneously seek response costs under CERCLA in a district court and different monetary relief here. *See OSI, Inc. v. United States*, 73 Fed.Cl. 39, 46 (2006) (noting that because the plaintiff in that suit could not "seek under CERCLA the damages for the destruction and diminution in the value of its property" in district court, the plaintiff could prosecute a takings claim in this court). In another takings case, this court's predecessor, the United States Claims Court, noted that "nowhere in this CERCLA has Congress withdrawn the Tucker Act grant of jurisdiction to hear a suit founded upon the constitutional right [to just compensation that may be available under takings jurisprudence when water has been contaminated by government activity]." *Clark v. United States*, 8 Cl.Ct. 649, 652 (1985). Finally, in an unpublished decision, this court has stated that a plaintiff may seek relief in this court for breach of the deed covenants required by CERCLA, because the rights implicated by these covenants are not strictly limited to CERCLA liability. *See Am. Int'l Specialty Lines Ins. Co. v. United States*, No. 05–1020C, 2008 WL 1990859, at \* 14 (Fed.Cl. Jan.31, 2008) (*American International*) (holding that the plaintiff's breach of deed covenants "allegation is separate and distinct from a CERCLA liability claim" (citing 42 U.S.C. § 9620(a)(1))).

*American International* is the case most on point for this jurisdictional issue. In that action, the court assumed jurisdiction over breach of contract claims based on CERCLA deed covenants and a memorandum of agreement. *American International*, 2008 WL 1990859, at \*8, \*12. The court rejected defendant's argument that CERCLA liability was the only liability at issue in the breach of contract claims before the court:

At the outset, the court notes that defendant's argument for the dismissal of the first [breach of contract] claim for relief assumes that plaintiff's claim can be disposed of pursuant to the liability provision of CERCLA, 42 U.S.C. § 9607. However, plaintiff's claim is not based on CERCLA's

liability provisions. Instead, plaintiff alleges that defendant did not comply with the provisions of the deed that contained the notices and covenants required by CERCLA. *See* 42 U.S.C. § 9620(h). That allegation is separate and distinct from a CERCLA liability claim.

*American International,* 2008 WL 1990859, at \* 14 (footnotes and citations omitted). The plaintiff in *American International* sought both compensatory damages and response costs. *See* Amended Complaint at 26, *Am. Int'l Specialty Lines Ins. Co. v. United States,* No. 05–1020C (Fed. Cl. filed Jan. 27, 2006). Thus, over the government's objections this court in *American International* asserted jurisdiction over breach of contract claims based on CERCLA covenants, where the plaintiff sought compensatory damages beyond response costs.

■ The holding in *American International* is in accord with several precedential decisions which have affirmed this court's Tucker Act jurisdiction over contract claims, despite the fact that the subject matter of the contracts at issue might otherwise have been governed by statutory schemes under which claims could not be litigated in this court. *See, e.g., California v. United States,* 271 F.3d 1377, 1383 (Fed.Cir.2001) (affirming this court's jurisdiction over a breach of contract claim, because no "unambiguous evidence in the text or legislative history of [the Flood Control Act of 1928, 33 U.S.C. § 702c (2006) showed] that Congress had 'withdrawn the Tucker Act grant of jurisdiction'" (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1017, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984))); *Massie v. United States,* 166 F.3d 1184, 1188 (Fed.Cir.1999) (holding that the Military Claims Act, now codified at 10 U.S.C. §§ 2731–2739 (2006) (MCA), did not deprive this court of jurisdiction to hear that plaintiff's claim, because "the MCA does not address the breach of agreements to pay MCA claims"); *Del–Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358, 1367–68 (Fed.Cir.1998) (holding that, absent "con-

gressional withdrawal of Tucker Act contract jurisdiction," an express contract such as a lease confers jurisdiction in this court for contract claims, even where the subject matter of the lease is governed by a broader statutory scheme such as the Tribal Consent Act, 25 U.S.C. §§ 323–324 (2006)). Defendant has not provided the court with any analysis of CERCLA that discloses congressional intent to withdraw Tucker Act jurisdiction over contract claims based on CERCLA covenants.[7] Indeed, the statute appears to disclaim such intent. *See* 42 U.S.C. § 9652(d) ("Nothing in this chapter [CERCLA] shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants.").

In other contexts, too, courts have been reluctant to find that non-CERCLA claims are somehow displaced or preempted by CERCLA. The general rule is that courts have not found CERCLA to exclusively occupy the field of environmental contamination litigation. *See ARCO Envtl. Remediation, L.L. C. v. Dep't of Health and Envtl. Quality of Mont.,* 213 F.3d 1108, 1115–16 (9th Cir. 2000) (noting, in the context of an environmental cleanup dispute, that state law claims that only indirectly affect a CERCLA cleanup are not preempted by CERCLA); *OSI, Inc. v. United States,* 510 F.Supp.2d 531, 538–39 (M.D.Ala.2007) (addressing the merits of claims brought under the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992k (2006), and CERCLA which were based on the same operative facts); *New York v. United States,* 620 F.Supp. 374, 378–79, 385–86 (E.D.N.Y.1985) (considering, in that environmental contamination case, relief sought under the Federal Tort Claims Act, 28 U.S.C. § 2671–2680 (2006), and CERCLA as alternative claims cognizable in a United States district court). For these reasons, the court finds that the CERCLA covenants in the 2003 deed do not necessari-

---

7. The court does not reach defendant's argument that the CERCLA covenants in the 2003 deed cannot support a breach of contract claim for other than the response costs available in a CERCLA suit, *i.e.,* that this portion of Count I of the complaint fails to state a claim. The court confines its analysis here to Tucker Act jurisdiction over plaintiffs' claims alleging a breach of deed covenants.

ly, as a jurisdictional matter, restrict plaintiffs' legal theories and recoveries to those provided by CERCLA.

### b. Plaintiffs' Claims in District Court Seek Different Relief

Defendant's second argument regarding plaintiffs' breach of covenants claim is that this claim is barred by 28 U.S.C. § 1500. Defendant's § 1500 argument is closely related to the government's contention discussed above, that plaintiffs could only recover response costs available under CERCLA if this court found that GSA had breached the CERCLA covenants in the 2003 deed. As a preliminary matter, the court notes that defendant's interpretation of CERCLA and this court's jurisdiction is not supported by the caselaw cited above, and is not persuasive. Plaintiffs' suit in this court appropriately invokes this court's jurisdiction over an alleged breach of an express contract by the United States, and seeks monetary relief that this court has the power to grant. The court now turns to defendant's § 1500 challenge to the complaint, a challenge which requires a comparison of the relief sought in the district court and the relief sought here.

Section 1500 provides in relevant part that

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . .

28 U.S.C. § 1500. The long-standing interpretation of § 1500 binding on this court is that Congress wished to prevent duplicative suits from being filed in a district court and this court. *See, e.g., Tecon Eng'rs, Inc. v. United States,* 170 Ct.Cl. 389, 343 F.2d 943, 947–48 (1965) (noting that an earlier-filed claim in a United States district court divests this court of jurisdiction of the same claim filed here). "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative*

*facts,* and must seek *the same relief." Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1551 (Fed.Cir.1994) (*en banc* ) The operative date for comparing claims pending in a district court and claims filed here is the date of filing in this court. *See id.* at 1548 ("The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed . . . ."). The § 1500 question relevant to this case is whether, as of February 3, 2009, the plaintiffs in the district court action sought the same relief there as they seek here.

The answer to that question is, quite simply, no. Plaintiffs in the district court action amended their complaint to only seek CERCLA remedies. *See U.S. Home Corp. v. United States,* No. 2:08–cv–04144–WJM–MF (D.N.J. Jan. 5, 2009). Their suit in this court quite specifically avoids requesting the relief sought in the district court. *See* Compl. at 20 (seeking "[c]osts of response not otherwise awarded in the CERCLA action"), 22 (same), 25 (same). In this court, plaintiffs also refrain from seeking a declaratory judgment under CERCLA § 113. Instead, the Developers seek costs of delay, overhead, diminution in value, stigma, damage to reputation and "[c]ompensatory damages." *Id.* at 20. Because plaintiffs seek distinctly different relief in this court, and do not request overlapping relief with the relief sought in the district court, § 1500 does not bar their breach of covenants claim in this court. *See, e.g., Loveladies,* 27 F.3d at 1554 (holding that § 1500 does not apply where "the claims in the two courts are for distinctly different and not the same or even overlapping relief") (citation omitted).

### 2. Breach of an Implied–in–Fact Contract Warranty as to the Environmental Condition of the Property

Defendant has not raised a jurisdictional challenge to plaintiffs' implied-in-fact contract claim allegedly created by the government's statements related to the environmental condition of the Property.[8] This

---

8. The court does not reach defendant's arguments regarding the complaint's failure to state a

claim in this regard.

court, under the Tucker Act, has jurisdiction over claims against the United States for breach of implied-in-fact contracts. *See, e.g., Hanlin v. United States,* 214 F.3d 1319, 1321 (Fed.Cir.2000) (stating that when a "complaint presents a non-frivolous allegation of the existence of an implied-in-fact contract[,] this is sufficient to confer jurisdiction in the Court of Federal Claims under 28 U.S.C. § 1491(a)(1)" (citing *Gould v. United States,* 67 F.3d 925, 929 (Fed.Cir.1995))). A non-frivolous jurisdictional allegation is one that asserts that the plaintiffs are "within the class of plaintiffs entitled to recover under the money-mandating source [—][t]here is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits." *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.,* 525 F.3d 1299, 1309 (Fed.Cir.2008). Potential money-mandating sources for Tucker Act claims in this court include express and implied contracts, statutes, regulations and constitutional provisions. 28 U.S.C. § 1491(a)(1); *see also McNabb v. United States,* 54 Fed.Cl. 759, 767 & n. 2 (2002) ("Plaintiffs' assertion of contract claims suffices as a money mandating basis for jurisdiction in this court." (citing *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997))); *Warr v. United States,* 46 Fed.Cl. 343, 350 & n. 6 (2000) ("A claim based upon an oral contract is sufficient to confer subject matter jurisdiction in this court."). In their amended complaint, plaintiffs have made a non-frivolous allegation that an implied-in-fact contract regarding the environmental condition of the Property was created between the United States and the Developers.[9] This court has jurisdiction over such a claim.

## B. Counts II and III—Violations of CERCLA § 120(h)

Defendant asserts that CERCLA § 120(h) is not a money-mandating statute, and therefore argues that this court has no jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to consider plaintiffs' claims alleging that the United States failed to perform its obligations under CERCLA § 120(h). Def.'s Mot. at 19–21. Plaintiffs argue in rebuttal that, in the absence of a private cause of action for money damages, CERCLA § 120(h) would provide a mere "right without a remedy (which is no right at all)." Pls.' Opp. at 26. Plaintiffs, based on this slimmest of arguments, reason that "CERCLA § 120(h) can be fairly interpreted as mandating compensation by the government." *Id.*

■ Plaintiffs bear the burden of establishing subject matter jurisdiction. *Alder Terrace,* 161 F.3d at 1377 (citing *McNutt,* 298 U.S. at 189, 56 S.Ct. 780). Plaintiffs cite in their brief to various provisions of CERCLA § 120(h). Pls.' Opp. at 24–25 (citing 42 U.S.C. § 9620(h)(1), (3)). None of the statutory provisions cited by plaintiffs contains language referencing a private cause of action, the payment of money by the United States or entitlement to compensation of any kind. Typically, money-mandating statutes must unequivocally discuss payment obligations of the United States. *See, e.g., Greenlee County, Ariz. v. United States,* 487 F.3d 871, 877 (Fed.Cir.2007) (holding that a statute was money-mandating when it stated that " 'the Secretary of the Interior *shall make a payment*' " and the law "provide[d] a detailed mechanism for calculating these payments" (quoting 31 U.S.C. § 6902(a)(1) (2006) and citing 31 U.S.C. § 6903 (2006))); *Agwiak v. United States,* 347 F.3d 1375, 1380 (Fed. Cir.2003) (ruling that a remote duty pay allowance statute was money-mandating because it contained language such as " 'is entitled' " and " '*shall be paid*' " (quoting 5 U.S.C. § 5942(a) (2006))); *Khan v. United States,* 201 F.3d 1375, 1378 (Fed.Cir.2000) (holding that 38 U.S.C. § 7401 (2006) "cannot be construed as a money-mandating statute" because "[i]t does not mention pay, nor does it create a cause of action for monetary damages" (citing *Testan,* 424 U.S. at 400, 96 S.Ct. 948)).

■ Precedent binding on this court states that "[u]nder Section 1491 what one must always ask is whether the constitutional

---

9. The recitations in the complaint alleging an implied-in-fact contract were not fully developed until plaintiffs submitted their brief opposing defendant's motion to dismiss. *Compare* Compl. ¶¶ 92–93 *with* Pls.' Opp. at 19–22.

clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport,* 372 F.2d at 1009. In that case, the Court of Claims explained how statutory commands to a federal agency are not necessarily money-mandating:

> On its face the section [alleged to be money-mandating in that case] is simply a regulatory measure (comparable to many another permission or license-granting statute) forbidding foreign sale of a vessel purchased from the Maritime Commission—unless the Commission sanctions the sale—and requiring Commission authorization for any foreign transfer. There is not a word in the text suggesting that the United States will compensate an applicant who suffers a business loss because of the Commission's improper failure to grant the request. Nor are we pointed to anything in the Act's legislative history hinting at that result. There is no decision of this or any other federal court holding or intimating that the United States will be liable under the Tucker Act for such a commercial injury resulting from a failure or wrong done in the course of the regulatory process.

*Id.* Here, too, CERCLA § 120(h) instructs the government as to its obligations when transferring real estate to a new owner, but is silent as to any liability of the United States for commercial injury resulting from the government's failure to meet those obligations. The court has found no authority stating that CERCLA § 120(h) is a money-mandating statute, and has found no language in the statute indicating that CERCLA § 120(h) mandates the payment of money by the federal government. For these reasons, Counts II and III of plaintiffs' complaint must be dismissed for lack of jurisdiction. *See Fisher,* 402 F.3d at 1172 ("[T]o come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.") (citations omitted).

## CONCLUSION

Jurisdiction lies for Count I of the complaint. Counts II and III of the complaint, however, are not founded on a money-mandating statute and must be dismissed for lack of jurisdiction. The court necessarily defers ruling on defendant's 12(b)(6) challenge to the complaint, and converts that portion of defendant's motion to dismiss to a motion for summary judgment. The parties shall indicate in a joint status report how they wish to proceed with defendant's summary judgment motion. Settlement negotiations and alternative dispute resolution (ADR) should be considered as alternatives to litigation.

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Renewed Motion to Dismiss, filed November 12, 2009, is **DENIED in part, GRANTED in part,** and **CONVERTED in part** to a summary judgment motion, as follows:

   (a) Defendant's RCFC 12(b)(1) challenge to Count I is **DENIED;**

   (b) Defendant's RCFC 12(b)(1) challenge to Counts II and III is **GRANTED;**

   (c) Defendant's RCFC 12(b)(6) challenge to Count I of the complaint is **CONVERTED** to a RCFC 56 motion for summary judgment and the court **DEFERS** ruling on defendant's summary judgment motion;

(2) The Clerk's office is directed to **DISMISS** Counts II and III of the amended complaint filed October 26, 2009, without prejudice;

(3) On or before **May 14, 2010,** the parties shall **FILE** a **Joint Status Report** proposing a schedule for further proceedings in the subject matter and stating the extent to which the parties have determined whether any or all of the claims before the court may be settled; and

(4) Each party shall bear its own costs.